## THE FIRST NATIONAL BANK OF CHICAGO

*v.*

## THE NORTHWESTERN NATIONAL BANK OF CHICAGO.

*Filed at Ottawa October 29, 1894.*

1. PRACTICE—*judge, in trials by court, need not find facts.* Section 41 of the Practice act, providing for the submission of propositions of law in trials by court, does not require the court to find particular facts, nor is that a function of the judge at common law.

2. SAME—*proposition that judgment should be for defendant, raises question of law.* In a trial by court, the submission by the defendant, to be marked "held" or "refused," of a proposition, "that, under the law and evidence, the judgment in this case should be for defendant," is in the nature of a demurrer to evidence, and preserves for a court of review the question of law whether the evidence tends to show a right of recovery.

3. PLEADING—*declaration need not state parties to bill of exchange.* It is not necessary in a declaration to state the parties to a bill of exchange, unless such parties be plaintiffs or defendants.

4. BILLS OF EXCHANGE—*when drawee estopped to deny drawer's signature—bank checks.* If the drawee of a bill of exchange accepts or pays it in the usual course of business, he will be estopped to afterwards deny the genuineness of the drawer's signature, which he is conclusively presumed to know. Bank checks payable to order are bills of exchange, and subject to this rule.

5. SAME—*estoppel to deny drawer's signature operates mutually.* An estoppel is mutual, and binds both parties. Therefore a collecting bank, taking and endorsing checks on which there are forged prior endorsements, cannot defeat a recovery back of the proceeds by the drawee bank, by setting up that the drawer's signature is also forged. The estoppel as to the drawer's signature binds both parties.

6. SAME—*estoppel does not apply to prior endorsements.* The drawee of a bill or check, being bound to look only at its face, by accepting and paying it admits the genuineness of the drawer's signature only, and is not estopped to deny the genuineness of endorsements.

7. SAME—*endorser warrants genuineness of prior endorsements.* An endorser of a check or bill of exchange warrants the genuineness of all preceding signatures endorsed upon it, including that of the payee.

8. SAME—*forged endorsement—when drawee may recover.* Where a drawee pays a bill or check to an endorser, who derives title through a prior forged endorsement, he may recover back the money, provided demand is made within a reasonable time after the discovery of the forgery.

Appeal from the Appellate Court for the First District ;—heard in that court on appeal from the Superior Court of Cook county; the Hon. Elliott Anthony, Judge, presiding.

The bank checks involved in this suit purported to be drawn by the Central Union Telephone Company upon the Northwestern National Bank of Chicago. Four of these checks were made payable to the order of "F. P. Ross, Manager," and one was drawn payable to the order of "C. H. Wilson, A. G. Supt." These checks were received by appellant, the First National Bank, in the regular course of business, being deposited with it by Chapin & Gore, who were regular depositors. Appellant endorsed them, "Pay through Chicago Clearing House only to First National Bank," and they being by the clearing house presented to appellee, were paid by it. Afterwards, it was discovered that the signatures of the maker, the telephone company, and that of the payees, Wilson and Ross, were forgeries. Thereupon the Northwestern National Bank brought this suit against the First National Bank. The other important facts are stated in the opinion.

Messrs. Remy & Mann, for the appellant :

The appellee being the depositary of the funds of the drawer, was bound to know the signature of the latter, and if it paid forged checks to an innocent holder for value it is concluded by the act, and cannot recover the money back from the one to whom payment was made. *Bank* v. *Ricker*, 71 Ill. 439 ; *Price* v. *Neale*, 3 Burr. 1354 ; *Wilson* v. *Alexander*, 3 Scam. 392 ;· *Hoffman* v. *Bank*, 12 Wall. 181 ; *Bank* v. *Bank of Georgia*, 10 Wheat. 348 ; *Bank* v. *Grocers' Nat. Bank*, 35 How. Pr. 412.

This rule has become one of right and action among business men, and any interference with it would be mischievous. *Park Bank* v. *Ninth Nat. Bank*, 46 N. Y. 77.

If a check on which an endorsement is forged be certified, the bank must pay it to a *bona fide* holder who took

after the certification.    "He who confides in the deceiver must suffer, rather than a stranger." *Hagan* v. *Bank*, 64 Barb. 197.

Certification of a check is intended to impress upon it, and does impress upon it, the character of money, and though such a check be stolen or lost, still a *bona fide* holder can recover upon it from the bank. *Nolan* v. *Bank*, 67 Barb. 24 ; Daniel on Neg. Inst. 1605.

Mr. CHARLES M. STURGES, for the appellee :

The endorsement of negotiable paper is a warranty of the genuineness of all preceding signatures.    2 Parsons on Notes and Bills, 588 ; 2 Randolph on Com. Paper, sec. 752 ; *Williams* v. *Tishomingo Institution*, 57 Miss. 633 ; *Cochran* v. *Atchison*, 27 Kan. 728 ; *Chambers* v. *Bank*, 78 Pa. St. 205.

This is merely a branch from the trunk principle of law, which implies a warranty of title upon the transfer or sale of personal property.    2 Benjamin on Sales, (Corbin's Am. ed.) sec. 961 ; sec. 948, note 18 ; sec. 955, note 19 ; *Flynn* v. *Allen*, 57 Pa. St. 482 ; *Swanzey* v. *Parker*, 50 id. 450.

This principle and warranty exist even where negotiable paper is transferred by delivery, and without endorsement.    *Swanzey* v. *Parker*, 50 Pa. St. 450 ; 2 Randolph on Com. Paper, sec. 753.

But the drawee is not chargeable with knowledge of any other signature on the bill.    *United States* v. *Bank*, 6 Fed. Rep. 852 ; *Williams* v. *Tishomingo Institution*, 57 Miss. 633 ; *Canal Bank* v. *Bank of Albany*, 1 Hill, 287 ; *Robinson* v. *Yarrow*, 7 Taunt. 455.

The doctrine of the exception is, that the drawee, once having accepted or paid, is thereupon estopped to deny the genuineness of his drawer's signature. *Bank* v. *Ricker*, 71 Ill. 416 ; 2 Daniel on Neg. Inst. secs. 1354-1359.

But this estoppel must, under the general doctrine of estoppels, operate reciprocally, and in turn forbid the other party, relying on the estoppel, to deny such genu-

ineness. *Gaunt* v. *Wainman*, 2 Bing. N. C. 69 ; *Cohoes* v. *Goss*, 13 Barb. 146 ; *Canal Co.* v. *Hathaway*, 8 Wend. 484 ; *Griffin* v. *Richardson*, 11 Ired. L. 439 ; *Bentley* v. *Cleveland*, 22 Ala. 821.

An acceptance or payment of a bill of exchange admits the genuineness of the signature of the drawer alone. It does not admit the genuineness of any endorsement of the bill. 2 Daniel on Neg. Inst. secs. 1364-1365 ; 2 Parsons on Notes and Bills, 482 ; *Beaman* v. *Duck*, 11 M. & W. 251 ; *Chambers* v. *Bank*, 78 Pa. St. 205 ; *Vagliano* v. *Bank*, L. R. 22 Q. B. Div. 103 ; L. R. 23 id. 243 ; *Canal Bank* v. *Bank of Albany*, 1 Hill, 287 ; *Marine Bank* v. *City Bank*, 59 N. Y. 76.

The genuine endorsement of the payee of negotiable paper is requisite to give good title to a subsequent holder. Without such endorsement such holder can neither lawfully demand, receive nor defend payment. *Smith* v. *Chester*, 1 T. R. 654; *Newman* v. *Ravenscroft*, 67 Ill. 496 ; *Beaman* v. *Duck*, 11 M. & W. 251 ; *Mead* v. *Young*, 4 T. R. 28 ; *Vagliano* v. *Bank*, L. R. 22 Q. B. Div. 103 ; L. R. 23 id. 243.

Where a drawee pays a draft to a person deriving title through a forged endorsement, he may recover back the money so paid, on discovery of the forgery. 2 Daniel on Neg. Inst. sec. 1364 ; *Canal Bank* v. *Bank of Albany*, 1 Hill, 287; *United States* v. *Bank*, 6 Fed. Rep. 852 ; *Williams* v. *Tishomingo Institution*, 57 Miss. 633 ; *Robarts* v. *Tucker*, 16 Ad. & El. 560 ; *Cochran* v. *Atchison*, 7 Kan. 728 ; *Dick* v. *Leverich*, 11 La. 359 ; *Vagliano* v. *Bank*, L. R. 22 Q. B. Div. 103 ; L. R. 23 id. 243.

The demand for repayment may be made within a reasonable time after the discovery of the forgery. 2 Daniel on Neg. Inst. sec. 1372 ; *United States* v. *Bank*, 6 Fed. Rep. 852 ; *Canal Bank* v. *Bank of Albany*, 1 Hill, 287.

Where the endorsement of the payee is forged, it does not change the rights of the drawee and acceptor that the name of the drawer is also forged. The drawee and acceptor is still entitled to insist on a genuine endorsement of the payee, and if the paper does not have that, the drawee and acceptor will not be required to bear the

loss. The exception against the drawee and acceptor extends only to the estoppel against him to deny his drawer's signature. *Vagliano* v. *Bank*, L. R. 22 Q. B. Div. 103 ; L. R. 23 id. 243.

Even where the drawee accepts and pays on the forged signature of his drawer alone, very able authorities now allow him to recover back where there was prior negligence on the part of the prior.holder, or where the loss had already occurred to such prior holder by his having cashed the paper. *Bank* v.*Ricker*, 71 Ill. 439; *Bank* v.*Bangs*, 106 Mass. 441 ; *Ellis* v. *Trust Co.* 4 Ohio St. 628 ; *McKleroy* v. *Bank*, 14 La. Ann. 458 ; 2 Parsons on Notes and Bills, 483 ; 2 Daniel on Neg. Inst. sec. 1362 ; Chitty on Bills, (13th Am. ed.) *431 ; 2 Morse on Banking, sec. 466.

Mr. JUSTICE BAKER delivered the opinion of the court:

In this action of assumpsit brought by the Northwestern National Bank of Chicago, against the First National Bank of Chicago, the issues were tried before the Superior Court of Cook county without a jury, and the court found the issues for the plaintiff, and assessed its damages at $2454, and rendered judgment therefor against the defendant. Upon an appeal to the Appellate Court for the First District the judgment was in all things affirmed, and thereupon the First National Bank of Chicago prosecuted this further appeal.

A preliminary question is raised by the appellee. It insists that all questions of fact are conclusively settled in its favor by the judgment of affirmance in the Appellate Court, and further, that no questions of law are so preserved in the record as that they can be reviewed in this forum.

At the trial, appellant submitted to the court eight "written propositions," which it prayed should "be held as law in the decision of the case." (Sec. 41 of Practice act, 2 Starr & Curtis' Ann. Stat. 1808.) The court "held" propositions 1, 2 and 3, but "refused" to hold propositions

4, 5, 6, 7 and 8 to be law applicable in the decision of the case, and to the action of the court in refusing to hold said five last mentioned propositions, and each of them, appellant then and there excepted.

In respect to propositions 4, 5, 6 and 7, it may well be said that they are not propositions of law, within the intent and meaning of section 41 of the Practice act. They are, both in form and in substance, mere prayers or solicitations of appellant to the trial court to find particular *facts* for it, "under the law and the evidence." The statute does not contemplate that under the cloak of written propositions of law a party litigant shall have the right to call upon the court to find in his or its favor, *seriatim*, all the special or particular facts involved in the evidence; and, *dehors* the statute, it is not a common law function of a judge, in a common law action, to make special findings of fact. The rule is, *ad quæstionem facti non respondent judices.* Broom's Legal Maxims, (4th ed.) 103 ; *Altham's case,* Coke, part 8, 155a. In *Memory* v. *Niepert,* 131 Ill. 623, the case was tried by the court below without a jury, and this court held that a proposition there asked was properly refused, and for the reason that no question of law was thereby raised. And so in the case at bar, the trial court could not properly have done otherwise than refuse to hold the propositions 4, 5, 6 and 7.

The trial court also declined to hold proposition 8 tendered by appellant, and marked the same "refused." That proposition reads as follows : "The court holds, as matter of law, that under the law and evidence the judgment in this case should be for defendant." There can be no question but that if the case had been on trial before a jury, and appellant had moved the court to instruct the jury that under the law and evidence, and as matter of law, the verdict and judgment in the case should be for the defendant, then such motion would have been regarded as a motion in the nature of a demurrer to the evidence, and as raising a question of law for the decision of the

court.    In *Bartelott* v. *International Bank*, 119 Ill. 259, it was held that motions to exclude the entire evidence from the jury, and motions to instruct the jury to find for the defendant, are in the nature of demurrers to evidence, and that they admit not only all that the testimony of the plaintiff proves, but also all that it tends to prove.    And it was also there held, that a motion to exclude the evidence, or to instruct the jury that they should find for the defendant, may be made after the evidence is heard on behalf of the defendant.    To like effect is the case of *Joliet, Aurora and Northern Railway Co.* v. *Velie*, 140 Ill. 59. In cases where the parties litigant agree that both matters of law and matters of fact may be tried by the court without a jury, and the only question at issue is the question of law whether the uncontroverted facts constitute a cause of action, no good reason is perceived why the defendant may not submit to the court such a proposition as proposition 8 now before us, to be "held" or "refused" by the court, as the court shall be of opinion the law of the case is, and why the submission of such a proposition should not be regarded as in the nature of a demurrer to evidence, and as sufficiently raising and preserving the question of law involved for re-examination in a court of review.

The exact question now before us does not seem ever to have been passed upon by this court.    But the case of *Pittsburg, Ft. Wayne and Chicago Railroad Co.* v. *Reich*, 101 Ill. 157, was tried by the court without the intervention of a jury, and upon the appeal this court, in discussing the several propositions of law that were refused at the trial, used this language in regard to one of them: "The fourteenth proposition was properly refused, because there was evidence tending to sustain a cause of action. It asserts, simply, that under the evidence there can be no recovery.    There was evidence tending to authorize a recovery.    Its weight was for the court."    The plain implication from this language is, that the propriety of holding or refusing a written proposition such as that now

before us, will depend upon the answer given to the question whether or not there is evidence in the record which fairly tends to establish a cause of action.

The conclusion to be deduced from that which we have said is, that we consider this case properly before us for the consideration of the question, as a question of law, whether the evidence tends to show a right of recovery in appellee.

It may be well, in order to clearly understand the nature of the case upon which appellee relies, to briefly state the substance of its declaration. The declaration contains ten counts, nine of which are special, and each of these special counts describes a different instrument in writing, and the tenth count is a common *indebitatus assumpsit* count for interest. The first count avers that on May 17, 1887, "a certain person" made and drew, by and under the name and style of "W. S. Chapman, Treas.," a certain draft or order, in writing, for the payment of money, commonly called a check on a bank, with the heading "Central Union Telephone Company," and said check being numbered with the number 13,006, and caused said check to be countersigned by and under the style of "Geo. L. Phillips, Prest.," and directed said check to the appellee, and thereby requested it to pay $300 to C. H. Wilson, who was described therein as "C. H. Wilson, A. G. Supt.," and that afterwards some one to plaintiff unknown, intending to defraud C. H. Wilson, and without the consent, knowledge or ratification of Wilson, and without the knowledge of plaintiff, forged on said check the name of "C. H. Wilson, A. G. Supt.," and caused said check, so indorsed, to be placed in the hands of Chapin & Gore, who in turn endorsed it "For deposit in the First National Bank to the credit of Chapin & Gore," and delivered it to the appellant, who in turn endorsed it "Pay through Chicago Clearing House only to First National Bank," and through said clearing house presented said check to appellee for payment, and thereby vouched and

warranted to appellee that the endorsement of C. H.
Wilson on said check was the genuine endorsement of
said Wilson, and that appellee, confiding in said warranty
of appellant, and in consideration thereof, and being
ignorant that such endorsement was forged, paid said
check to appellant and took up the check; that appellee
did not discover the fact of such forgery until July 25,
1887, when it notified appellant, tendered to it the check,
and demanded that appellant should make good its war-
ranty, and should repay to appellee the amount of the
check, by means whereof appellant became liable to pay,
promised to pay, and afterwards refused, etc.   The aver-
ments of the second count are substantially the same as
those of the first count, except that the check is dated May
31, 1887, is numbered 13,051, and is for $250.   The aver-
ments of the third count are substantially the same as
those of the first count, except that the check is dated
June 13, 1887, is numbered 13,086, and is for $200.   The
averments of the fourth count are substantially the same
as those of the first count, except that the check is dated
June 13, 1887, is numbered 13,087, and is for $200, and
except, further, that the count contains the additional
averment that on June 30, 1887, appellee accepted said
check and wrote on the face thereof these words:   "Ac-
cepted payable through Chicago Clearing House, June 30,
1887.—Northwestern National Bank.—Sheahan, Teller."
The averments of the fifth count are substantially the
same as those of the first count, except that the check is
dated July 5, 1887, is numbered 13,145, and is for $200, and
except, also, that there is no averment that it is counter-
signed by and under the style of "Geo. L. Phillips, Prest."
The averments of the sixth count are substantially the
same as those of the first count, except that the payee
named in the check is "F. P. Ross, M'gr.," and except that
the check is dated May 31, 1887, is numbered 13,049, and
is for $200.   The seventh count is the same as the sixth
count, except that date of check is May 1, 1887, and its

number is 13,050, and it is for $300.10.   The eighth count is the same as the sixth count, except that date of check is June 18, 1887, and its number is 13,085, and it is for $200.   The ninth count is the same as the sixth count, except that date of check is July 5, 1887, and its number is 13,147, and its amount is $200, and except, also, that it con- tains an additional averment that on July 13, 1887, appellee accepted said check, and wrote on the face thereof : "Accepted payable through Chicago Clearing House July 13, 1887.—Northwestern Nat'l Bank.—Sheahan, Teller."

The only plea filed to the declaration was that of the general issue, and issue was joined thereon.   But at the trial a stipulation was made that appellant might, under that plea, introduce evidence to prove that the checks were otherwise forged, prior or in addition to the endorse- ments alleged to have been forged, and that such prior and other forgeries were on said checks when they came to the hands of appellant, and without its knowledge, provided the court should hold proof of such matter com- petent as a defense, and provided appellee might intro- duce, in reply, all matters in evidence, and provided the rulings of the court admitting or rejecting such evidence should be subject to exception by either party, other than on the point of its admissibility under the pleadings.

The declaration proceeds upon the theory that it is immaterial, as between the parties to this suit, who, in fact, drew the checks.   The allegation in each of the special counts is, that "a certain person" drew the check. In 2 Chitty's Pleading, (10th Am. ed.) *150, it is said that it is not necessary to state the names of the parties to a bill of exchange, unless they be plaintiffs or defendants. It may also be said that the declaration virtually admits that the several checks were genuine checks of the tele- phone company, and that the endorsements of the payees alone were forgeries.

At the trial the court admitted evidence to show that the signatures of the drawers of the checks were forgeries.

That evidence was introduced over the objections and exceptions of appellee, appellee specifying as grounds of objection that such inquiry was irrelevant to the issues in the cause, and that under the issues, and as between the plaintiff and defendant, the signatures of the drawers of the checks were conclusively presumed to be genuine. Appellee was right in its contentions. A check payable to order is a bill of exchange payable to order on demand. The drawee of a bill of exchange or of a bank check is conclusively presumed to know the signature of the drawer, and if he accepts or pays, in the usual course of business, a bill or check whereon the signature of the drawer is a forgery, he will be estopped to afterward deny the genuineness of such signature. *First Nat. Bank of Quincy* v. *Ricker*, 71 Ill. 439; Bigelow on Estoppel, (4th ed.) 498; 2 Herman on Estoppel and Res Judicata, secs. 1006, 1008. But the operation of an estoppel is reciprocal, for there can be no estoppel unless it be mutual. It must bind both parties, and one who is not bound by it can not take advantage of it. 2 Herman on Estoppel, sec. 1295; Co. Lit. 352 *a*; *Griffin* v. *Richardson*, N. C. 11 Ired. L. 439; *Gaunt* v. *Wainman,* 3 Bing. N. C. 69, and 32 Eng. C. L. 42; *Bentley et al.* v. *Cleaveland,* 22 Ala. 814; *Welland Canal Co.* v. *Hathaway,* 8 Wend. 480. And so, as, in respect to the transactions involved in the present litigation, appellee is precluded from questioning the genuineness of the signatures of the treasurer and president of the telephone company to the nine checks, so also is appellant estopped from so doing. The case stands, as between the parties to this suit, just as though the signatures of the drawers of the checks were authentic. To rule otherwise would be to disregard the maxim of the law, *allegans contraria non est audiendus,* and to permit appellant to blow both hot and cold with reference to the same transactions.

In the present case, the admission of the incompetent testimony seems to have worked no injury, for when the

trial court came to make its findings upon the issues, it manifestly disregarded such testimony, as being irrelevant.

The estoppel, however, of which we have spoken, applies only to the case of the signature of the drawer, and of the drawer alone. A drawee is bound to know the signatures of his own customers, and a bank is bound to know the signatures of those who deposit with it and draw checks against such deposits. But the drawee or bank is not chargeable with knowledge of any other signature on the bill of exchange or bank check, and by accepting or paying the bill or check does not admit the genuineness of any endorsement on it. 2 Daniel on Neg. Inst. secs. 1364, 1365; *Marine Nat. Bank* v. *Nat. City Bank*, 59 N. Y. App. 67; *Canal Bank* v. *Bank of Albany*, 1 Hill, 287; *Vagliano* v. *Bank of England*, L. R. 22 Q. B. Div. 103; *Vagliano* v. *Bank of England*, (on appeal,) L. R. 23 id. 243. And even if a drawer draws a bill or a check payable to himself or his own order, and at once endorses it, an acceptance or payment of it by the drawee admits only the genuineness of the drawer's original signature, but not the genuineness of his endorsement. 2 Parsons on Notes and Bills, 483; 2 Daniel on Neg. Inst. sec. 1365; *Beeman* v. *Duck*, 11 Mees. & Wels. 251; *Williams* v. *Drexel*, 14 Md. 566.

At the trial, C. H. Wilson testified for appellee, as follows: "I lived in Columbus in May, June and July, 1887, and was assistant general superintendent of the Central Union Telephone Company. That company, during those months, was accustomed to draw checks on the Northwestern National Bank to my order, under the designation of 'A. G. Supt.' The signatures to the endorsement of the checks mentioned in the first five counts of the declaration, and now shown me, are not my signatures. They are forgeries,—every one of them. I never authorized any one to sign my name to those checks, nor did I know they were signed, nor have I ratified or approved the endorsements, or either of them." And F. P. Ross testified as follows: "I reside at Colum-

bus, Ohio. Was manager of the Central Union Telephone Company Exchange there in May, June and July, 1887. Was accustomed to receive, from time to time, checks drawn by the Central Union Telephone Company to my order, as manager, on the Northwestern National Bank of Chicago, generally resembling the checks now shown me, described in the sixth, seventh, eighth and ninth counts of the declaration. The endorsements on the back of them are not my endorsements. They are forgeries. I never authorized, consented, ratified or approved such endorsements."

It is urged that the forgery of the endorsements is not sufficiently proven. The claim, as we understand counsel, is, that it does not appear that the checks were really drawn in favor of Wilson and Ross, respectively, in the sense that they thereby became the owners, respectively, of them, or that it was the intention of the drawer or drawers, by means of the checks, to pay them money, or that the checks were delivered to them, but that, on the contrary, it is logically deducible from the declaration and the evidence that the checks were delivered to some person whose name is not disclosed, and that it was the intention of the drawer or drawers that such person should in fact receive the money, and it is submitted, that in such state of the case it was not forgery on the part of the holder of the checks to endorse the name of Wilson, or that of Ross, on the checks payable to them, respectively. The contention seems to be, that there can be no real payee of a forged instrument, and no such thing as a forged endorsement of the name of the ostensible payee of a check to which the name of the drawer is forged. This argument is more specious than sound. It is a complete answer to it to repeat what we have already said in another connection : that, as between appellee and appellant, both parties are estopped from claiming that the original checks are not genuine, or that the name of the drawer signed to them is forged.

If further authority upon that point is desirable, it is afforded by the recent (1889) judgment of the Court of Appeals in the case of *Vagliano* v. *Bank of England*, L. R. 23 Q. B. Div. 243.   The amount there involved was about $350,000. In the bills of exchange there in question, both the signatures of the drawer and the endorsements of the payee were forged.   In this respect it was like the case at bar, and in respect to the questions at issue it was also singularly like it.   It may be well to remark, by way of explanation of some of the language that we shall quote, that one of the questions under examination was whether a certain sub-section 3 of a statute of 1882 was a mere codification of existing law or an alteration of it.   The court there said : "The bank can only justify the payment that has been made, by showing that the documents were to be considered in the light of bills originally payable to bearer, in which case the bank would be authorized to pay the amount to the person who was the holder. Counsel for the bank contended before us that the payees named, C. Petridi & Co., were fictitious payees.   A real and existing firm of that name were, in fact, carrying on business at Constantinople, and had been on previous occasions payees of genuine bills drawn by Vucina upon Vagliano Bros.   It was unquestionably intended by Glyka that the acceptor should believe, and the acceptor in each case did believe, that the payees indicated were the C. Petridi & Co. in question, but it was urged by the appellant's counsel that as Glyka, the forger, intended to forge C. Petridi & Co.'s names, and never meant that they should have anything to do with the bills, the payees were fictitious.   *   *   *   Before accepting such a construction of the sub-section it is desirable to state with precision what was the previous commercial law upon the subject.   The law merchant seems to have been clear, and to have been based throughout on the principle of the law of estoppel, which, in its turn, is conformable with reason and business principles.   The genuineness of the endorsement of

the payee was a matter as to which, except in one special instance, no estoppel prevailed. The one exception to the rule was the case described in Story on Bills of Exchange, sections 56 and 200. This exceptional rule in the case of fictitious bills is based, as has been stated, on a special application to a particular case of the principle of estoppel, which plays so important a part in the law merchant." Then, after a review of the cases, the court added : "Down, therefore, to the date of the passing of the recent statute, the exception that bills drawn to the order of a fictitious or non-existing payee might be treated as payable to bearer, was based uniformly upon the law of estoppel, and applied only against the parties who, at the time they became liable on the bill, were cognizant of the fictitious character or of the non-existence of the supposed payee. The principle that lies at the root of the exception is, that a reasonable effect must be given, in favor of *bona fide* holders, to the act of acceptance, and that where it appears that although there was a named payee he was so completely fictitious or non-existing that the acceptor could not have intended to restrict payment to such payee or his order, the acceptor, who must be taken to have intended that his acceptance should have some commercial validity, was estopped from saying that the bill was not a bill payable to bearer. If the exception is to be extended beyond this, it will rest upon no principle at all, and this strange result would follow:  that where, for purposes of fraud, a payee's name is introduced, (whose signature it is intended to forge,) the acceptor, though innocent and ignorant, will be bound to pay, and his bankers will be justified in paying without any endorsement at all. The acceptor, in such cases, will be a helpless victim. Ignorant, himself, of the fraud, believing from first to last that he has accepted a bill payable only to a particular payee or to his order, he will be held, in law, nevertheless, to have accepted a bill payable to bearer. The word 'fictitious' must in each case be interpreted with due regard to

the person against whom the bill is sought to be enforced. If the obligations of the acceptor are in question, and the acceptor is the person against whom the bill is to be so treated, fictitious must mean fictitious as regards the acceptor, and to his knowledge. Such an interpretation is based on good sense and sound commercial principle. * * * Petridi & Co. of Constantinople did not cease to be real persons because Glyka meant to suggest, falsely, that they were to be the payees, and meant himself to forge their names. According to the ordinary sense of the English language the payees of these bills were not fictitious, but real, persons, from first to last, and to construe the (law) otherwise would be to render it the source of needless disorder and confusion in business transactions. The instruments in question were not, therefore, payable to bearer, and the bank having paid upon forged endorsements, must, in the absence of any other ground of defense, take the consequences."

When appellant endorsed the nine checks, and collected from appellee the sums of money called for by them, it warranted the genuineness of all the preceding signatures endorsed on the respective checks, including the endorsements on the checks of the names of the respective payees named in such checks. (2 Parsons on Notes and Bills, 588; *Williams* v. *Tishomingo Savings Institution*, 57 Miss. 633; Story on Bills of Exchange, sec. 225.) And where a drawee or a bank pays a bill of exchange or a bank check to an endorser who derives title through a prior forged endorsement, he may recover back the money so paid, on discovery of the forgery, provided he makes demand for repayment within a reasonable time after the discovery of such forgery. 2 Daniel on Neg. Inst. secs. 1364, 1372; *Canal Bank* v. *Bank of Albany*, 1 Hill, 287; *Williams* v. *Tishomingo Savings Institution, supra.*

The evidence shows that appellee accepted two of the checks, "payable through Chicago Clearing House," prior to the time that they were transferred to Chapin & Gore.

This makes no difference.   An acceptor is bound to look only at the face of the bill or check, and an acceptance never proves an endorsement ; and even if the supposed endorsements of the payees of said two checks were on them at the times when they were respectively accepted, yet such acceptances did not admit the handwriting of the endorsers.  (*Smith* v. *Chester*, 1 Term Rep. 654 ; *Robinson* v. *Yarrow*, 7 Taunton, 455 ; 2 Eng. Com. Law, 445.)   In this case, the acceptance or certification of the two checks simply warranted the genuineness of the signatures of the drawer, and that it had funds sufficient to meet them, and engaged that those funds should not be withdrawn from the bank by the drawer, and that the bank would pay through the agency of the Chicago clearing house the amount, if any, actually due on the check, to the person legally entitled to receive it.   The acceptance or certification did not warrant the genuineness of the bodies of the checks, either as to the payees or the amounts, or warrant the genuineness of the endorsements on the checks.  *Marine Nat. Bank* v. *Nat. City Bank*, 59 N. Y. App. 67 ;  *Security Bank* v. *Nat. Bank*, 67 id. 458.

The case made by the evidence introduced by appellee was in substance as follows :  Nine several checks, of different dates and amounts, were made by some person, and signed and countersigned in manner and form as stated in the nine special counts of the declaration, five of which were made payable to C. H. Wilson, A. G. superintendent, and the remaining four to F. P. Ross, manager, and directed said checks to the appellee bank.   All of these checks, each of them purporting to be endorsed by the payee therein named, were transferred, for value, to Chapin & Gore, who endorsed each of them "For deposit in the First National Bank to the credit of Chapin & Gore," and delivered them to appellant, and appellant also endorsed each of them "Pay through Chicago Clearing House only to First National Bank," and through said clearing house presented them, so endorsed,

to appellee for payment, and received from it, in payment thereof, the full amounts called for by said checks. None of said checks were in fact endorsed by the payees therein respectively named, but all of the endorsements purporting to be made by the payees were forgeries, and appellee paid said checks in ignorance of such forgeries. After business hours on Saturday, July 23, 1887, appellee made discovery of the forgeries, and on the following Monday, July 25, 1887, it tendered the checks back to appellant and demanded repayment of the money paid by it on the same, but appellant refused to make such repayment. Two of said checks, before they came into the hands of Chapin & Gore, had been accepted by appellee, it writing on the face of each of them these words : "Accepted payable through Chicago Clearing House."

In our opinion these facts established, *prima facie*, a right of action in appellee as against appellant, and it follows that the trial court, in refusing to hold the eighth proposition submitted by appellant, to the effect that under the evidence the finding and judgment should, as a matter of law, be for appellant, committed no error.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*