(No. 13831.—Judgment reversed.)

THE NATIONAL CITY BANK OF CHICAGO, Appellee, *vs.*
THE NATIONAL BANK OF THE REPUBLIC OF CHICAGO,
Appellant.

*Opinion filed October 22, 1921—Rehearing denied Dec. 7, 1921.*

1. BILLS AND NOTES—*construction of Negotiable Instruments
act.* In construing the Negotiable Instruments act the language
should be interpreted so as to give effect to the beneficent design
of the legislature in passing the act for the promotion of harmony
in the law regarding negotiable paper, and the court should take
the act as it is written and give the words their natural and com-
mon meaning and should not attempt to harmonize the provisions
with earlier statutes or decisions which are in conflict with the
language of the act.

2. SAME—*effect of acceptance of draft by drawee.* Under sec-
tion 62 of the Negotiable Instruments act, a drawee, by a general
acceptance of a draft, binds itself to pay the draft to the order of
the payee named therein and the drawer is discharged from lia-
bility, and even though the name originally written in the draft as
payee is erased and another name substituted, by accepting the
draft so altered the acceptor admits the existence of the payee
whose name is substituted for the original payee and the capacity
of said second payee to indorse the draft. (*State Bank* v. *Mid-
City Trust and Savings Bank,* 295 Ill. 599, distinguished.)

3. SAME—*when a bank takes draft as a holder in due course.*
Even though the name of the payee in a draft has been erased
and another name substituted thereon, a bank which takes the draft
in good faith and for value and without notice of any infirmity
in the instrument or defect in the title of the person negotiating
it becomes a holder in due course, where the draft is complete and
regular on its face and has been duly accepted by the drawee bank.

APPEAL from the First Branch Appellate Court for
the First District;—heard in that court on appeal from
the Circuit Court of Cook county; the Hon. A. D. MOR-
GAN, Judge, presiding.

MOSES, ROSENTHAL & KENNEDY, (HAMILTON MOSES,
and HENRY JACKSON DARBY, of counsel,) for appellant.

G. L. WIRE, for appellee.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

On January 4, 1915, the Jackes-Evans Manufacturing Company of St. Louis purchased a draft for $629.80 .from the Broadway Savings Trust Company of St. Louis drawn on the National City Bank of Chicago and payable to the order of the American Sheet and Tin Plate Company of Pittsburgh. On the same day the St. Louis company enclosed the draft in a letter addressed to the Pittsburgh company and deposited the letter in a mail-box. Andrew H. Manning rifled this mail-box and stole the draft. He substituted his name for the name of the American Sheet and Tin Plate Company. The alteration of the draft was done with such skill that it could not be detected by inspection. January 9 Manning appeared at Barnett Bros. jewelry store, in Chicago, and selected and agreed to purchase certain diamonds for $600. In payment of the purchase price Manning tendered to P. Barnett the altered draft for $629.80. Manning, in the presence of Barnett, endorsed the draft in blank, and Barnett, with the consent of Manning, took the draft to the drawee, the National City Bank of Chicago, and personally presented it to that bank for acceptance. The bank accepted the draft by writing across the face of the draft these words and figures: "Accepted, payable through Chicago clearing house 55055, Jan. 9, '15—The National City Bank of Chicago, per G. D. Grim, Paying Teller." The drawee also entered in its records the following notation:

"THE NATIONAL CITY BANK OF CHICAGO.
Certification Debit.                                    $629:80
    "As shown by teller's stamp we certify & charge to the account of Broadway Sav. Trust Co. St. Louis, Makers number or date 5584 Order of Andrew H. Manning.
    No. 55055                        Asst payer    Jan 9, 1915
    "Customer will please call at bank & exchange this slip for check described above.                N. C. B. 1/9/15"

The draft, with the acceptance written thereon, was returned to Barnett, who returned to his place of business. Barnett delivered the diamonds, of the fair retail market value of $600, and $29.80 in money, and retained therefor, with the consent of Manning, the draft so endorsed and accepted. Thereafter Barnett endorsed the draft to the order of the National Bank of the Republic, and January 11, 1915, deposited the draft to the credit of his account with said bank. January 12, 1915, the National City Bank, the drawee, through the Chicago clearing house, paid the National Bank of the Republic the sum of $629.80 in payment of the draft. February 4, 1915, the National City Bank returned to its customer, the Broadway Savings Trust Company, this draft along with other canceled paper for January. The draft was received in St. Louis the following day, and the St. Louis bank at once notified its Chicago correspondent, the drawee, that the draft had been altered by changing the name of the payee, and asked that its account be credited with the amount of the draft. The drawee in turn notified the National Bank of the Republic of the alteration and asked for reimbursement, which was refused. The drawee voluntarily credited the account of the St. Louis bank with the amount of the draft and brought suit in the circuit court of Cook county against the National Bank of the Republic to recover the amount paid on this draft. Judgment was rendered in favor of the drawee, and that judgment was affirmed, on appeal, by the Appellate Court for the First District. That court granted a certificate of importance, and this appeal followed.

In its last analysis the question presented for decision is the liability of the acceptor of a negotiable instrument under section 62 of the Negotiable Instruments law, which provides: "The acceptor by accepting the instrument engages that he will pay it according to the tenor of his acceptance, and admits: 1. The existence of the drawer, the genuineness of his signature, and his capacity and au-

thority to draw the instrument; and, 2. the existence of the payee and his then capacity to endorse." The question presented, so far as we have been able to determine, is one that has not been passed upon by any court of last resort in this country. Judging from the able briefs filed, counsel have given this case much thought, and they say that they have been unable to find a case exactly in point. Counsel for appellee insists, however, that this case is controlled by *First Nat. Bank* v. *Northwestern Nat. Bank,* 152 Ill. 296, *Metropolitan Nat. Bank* v. *Merchants' Nat. Bank,* 182 id. 367, and *State Bank* v. *Mid-City Trust and Savings Bank,* 295 id. 599. We shall notice these decisions later.

Illinois adopted the Negotiable Instruments law in 1907. This law was the result of an effort to codify the law of negotiable instruments and to establish uniformity in this important branch of the law by securing the adoption of the code by all the States of the Union. In 1896 the commissioners appointed by the several States finally agreed upon a draft of a bill to be recommended to the several legislatures. This law, in a few cases with some modifications but generally in the form recommended, has been adopted in forty-six of the forty-eight States of the Union. Prior to the adoption of the act by the various States there was lack of uniformity in the statutes of the States and in the decisions of the courts with reference to the law merchant. This led to great confusion in the conduct of business among the merchants of the several States and prompted the effort to establish uniformity. The aim was to codify the law rather than to reform it. In order to establish uniformity it was necessary to change the law in some States, but where these changes were made the Negotiable Instruments law generally lays down the rule which conforms to the weight of authority. The confused state of the law before the adoption of the Negotiable Instruments law would naturally bring some of its provisions in conflict with the statutes and decisions of the several

States.   In construing the act the language ought to be interpreted in such a way as to give effect to the beneficent design of the legislature in passing an act for the promotion of harmony in the law regarding negotiable paper.   The court must take the act as it is written and should give to the words used their natural and common meaning.   The law was enacted for the purpose of furnishing in itself a certain guide for the determination of all questions covered thereby relating to commercial paper, and, so far as it speaks without ambiguity as to any such question, reference to case law as it existed prior to the enactment is more likely to be misleading than beneficial. If the provisions of the act harmonize with the general principles of commercial law in force before its enactment those principles should be followed, but if the language of the act conflicts with statutes or decisions in force before its enactment the courts should not give the act a strained construction in order to make it harmonize with earlier statutes or decisions.   If this is done the very purpose of the act is defeated.   In order to keep the law as nearly as may be uniform, the courts of all the States should keep in mind the spirit and object of the law and should give to the language of the act a natural and common construction, so that all might be more likely to come to the same conclusion.

Section 62, hereinbefore quoted, so far as it applies to the facts in this case, declares that the acceptor by accepting the instrument engages that he will pay the instrument which he has accepted according to the tenor of his acceptance and admits the existence of the payee and his then capacity to endorse.   The instrument which appellee accepted was payable "to the order of Andrew H. Manning." By its acceptance it admitted that Andrew H. Manning was in existence, and that Andrew H. Manning at the time of acceptance was not suffering any legal disability which would affect his ability to pass title to the instrument ac-

cepted by means of endorsement. According to the plain language of this section appellee by its general acceptance bound itself to pay a draft for $629.80 payable to the order of Andrew H. Manning. After the draft was accepted by appellee the drawer was discharged from liability thereon. When appellant took the draft it was complete and regular upon its face. It had been duly accepted by the drawee. It was taken in good faith and for value, and appellant then had no notice of any infirmity in the instrument or defect in the title of the person negotiating it, and appellant was therefore a holder in due course. It relied upon the general acceptance of appellee and under the Negotiable Instruments law was protected by it. This construction of section 62 is in accordance with that sound principle which declares that where one of two innocent parties must suffer a loss the law will leave the loss where it finds it.

The first two cases on which appellee relies were decided some years before the adoption of the Negotiable Instruments law, and in so far as the principles announced in those decisions are in conflict with the positive provisions of the statute the statute must prevail. In both these cases it was held that the drawee by accepting a draft simply warranted the genuineness of the signature of the drawer and that it had funds sufficient to meet the draft, and engaged that those funds should not be withdrawn from the drawee by the drawer and that the drawee would pay the amount actually due on the check to the person legally entitled to it. It was specifically held that the acceptance of a draft did not warrant the genuineness of the body of a draft either as to the payee or the amount. These decisions are in harmony with the first obligation placed upon the acceptor by section 62 but are in direct conflict with the second obligation fixed by said section.

Appellee contends that the drawee by accepting this draft admitted the existence of the payee named in the

draft by the drawer,—that is, the American Sheet and Tin Plate Company,—and that it admitted the capacity of the American Sheet and Tin Plate Company to endorse the draft. We cannot agree with this contention. The drawee knew nothing of the American Sheet and Tin Plate Company and could have admitted nothing regarding its existence or its capacity to endorse. If section 62 means anything it means just what it says—that is, by accepting this draft appellee admitted the existence of the payee then named in the draft and the capacity of the named payee to endorse the draft.

In *State Bank* v. *Mid-City Trust and Savings Bank*, *supra*, the State Bank accepted a check payable through the Chicago clearing house when properly endorsed. A depositor of the Mid-City Bank whose name was the same as that of the payee named in the check forged the endorsement of the payee and deposited the proceeds of the check with the Mid-City Bank. In this case the acceptor, the State Bank, recovered from the Mid-City Bank the amount paid on this check. The declaration on which recovery was had was drawn on the theory that the acceptor was liable to pay the amount of the check to the real payee. It was held that the check had never been delivered to the real payee and had never come into his possession and that he had acquired no right and incurred no liability by reason of the acceptance of this check. The judgment was reversed and the cause remanded for a new trial. Section 62 of the Negotiable Instruments law is not mentioned in the opinion nor does it appear that it was considered by the court in reaching its conclusion. When the facts in that case and the point presented for decision are considered the decision does not conflict with anything said in this opinion.

The judgments of the Appellate and circuit courts are reversed.
                                    *Judgment reversed.*