### CITIZENS' NAT. BANK OF ODESSA v. SAN ANGELO NAT. BANK OF SAN ANGELO. (No. 7371.)

Court of Civil Appeals of Texas. Austin. June 5, 1929.

Rehearing Denied July 17, 1929.

Blair & Smith, of Midland, for appellant.
Harris, Harris, & Sedberry, of San Angelo, for appellee.

BLAIR, J. Appellee sued appellant for the refund of $260 paid on a forged check, and, and on a trial to the court without a jury, recovered judgment as prayed; hence this appeal.

The facts alleged and agreed to show that there was presented to appellant for payment at Odessa, Tex., a check for $260, purporting

to have been drawn on appellee by Pecos Oil Company, a customer of appellee, payable to G. S. Wilson, and indorsed by "G. S. Wilson" and "Sophie Baker." On October 10, 1927, appellant indorsed the check, "Pay to the order of any bank, banker, or trust company * * * previous indorsements guaranteed," and sent same through regular banking channels to appellee at San Angelo, Tex., for collection. Appellee received and paid the check on October 17, 1927. November 11, 1927, Pecos Oil Company notified appellee that the check was a forgery, whereupon appellee notified appellant of the forgery, and demanded a refund of the amount so paid, which was refused.

The sole question presented is whether under these pleadings and agreed facts judgment should have been rendered for appellant as a matter of law. We think so.

█ The case is settled by the following rule announced in the case of Rouvant v. San Antonio Nat. Bank, 63 Tex. 610, 612: "A bank, in accepting and paying a draft drawn by a customer, is generally held to know the signature, and, if a forged draft is accepted and paid, the bank, as a general rule, will not be heard to assert a mistake as to the signature. City Bank v. National Bank, 45 Tex. 218; Price v. Neal, 3 Burr. 1354; Levy v. Bank of the United States, 1 Bin. [Pa.] 27."

This rule prevails as between banks, one of which pays out money as drawee on a forged check of its customer to another bank presenting the check for collection or to a holder in due course. 7 C. J. 695, § 423 (4); First Nat. Bank v. City Nat. Bank, 182 Mass. 130, 65 N. E. 24, 94 Am. St. Rep. 638, and note.

█ Appellee admits the general rule, but seeks to bring itself within the exception thereto announced in the case of First Nat. Bank of Quitman v. Wood County (Tex. Civ. App.) 294 S. W. 324, affirmed by Commission of Appeals, 299 S. W. 856, because appellant indorsed the check "previous indorsements guaranteed." There it is held that, where a holder bank pays a forged check to the person presenting it without identifying him, and drawee bank pays the check without active fault or negligence in discovering the lack of genuineness of the signature of its customer at the time, being thrown off its guard by reason of the holder bank indorsing it "previous indorsements guaranteed," and in reliance thereon, and in reliance that holder bank exercised due care and diligence in the identification of the person to whom it paid the money on the check, the drawee bank was entitled to recover the amount paid the holder bank on the forged check. But in this case appellee neither alleged nor proved that it paid the check in question because of being thrown off its guard by reason of appellant's indorsing same "previous indorsements guaranteed," and in reliance thereon, nor that appellant was guilty of any negligence which induced or misled it to pay the check because of such indorsement. Nor is any fact, reason, or excuse alleged or proved why appellee paid the check without discovering the lack of genuineness of its customer's signature at the time. The burden was on appellee to so allege and prove in order to bring its case within the exception to the general rule that a drawee bank or other drawee of commercial paper is bound to know the signature of its customer. Otherwise more weight would be given to the exception than to the rule.

Neither the case cited, nor does any case in so far as our research goes hold that a drawee bank can excuse itself from the duty to carefully examine and discover the forgery of its customer's signature to a check presented for collection by another bank or holder in due course, upon the mere allegation and proof that the check bore the customary indorsement used by banks sending checks through regular banking channels to drawee bank for collection. The fact that the check was sent for collection should indicate to a drawee bank that the sending bank was holding up payment until drawee bank had examined the check and ascertained the genuineness of the drawer's signature. The indorsement, "Previous indorsement guaranteed," is merely the passport for the check through regular banking channels, and is so understood by the banking business. And while Texas may go farther than most jurisdictions in modification of the common-law rule that a drawee bank or other drawee of commercial paper is bound to know the signature of its customer to a check or draft, still all the cases hold that a drawee bank paying a forged check purporting to have been drawn by its customer must allege and prove that drawer or other holder who received the money had knowledge of the forgery, or was negligent, or was a party to the forgery, before it can recover back its loss on such check. Or, as is stated by the Court of Civil Appeals in the Quitman Bank Case, supra: "As a general rule the doctrine prevails that, unless the drawer of the check whose name be forged is, by negligence or acquiescence, rightfully responsible, the drawee bank cannot charge the amount paid * * * against him. [Citing cases.] It is for the reason that a bank, in paying a check drawn by a depositor, is generally held to know the signature, * * * unless under the exception stated above."

The Court of Civil Appeals, in support of its conclusion in the Quitman Case, supra, cites a Tennessee case. People's Bank v. Franklin Bank, 88 Tenn. 299, 12 S. W. 716, 6 L. R. A. 724, 17 Am. St. Rep. 884. It sustains the conclusion. However, this case was criticised by a later Supreme Court of Tennessee, in the case of Farmers' & Merchants' Bank v. Rutherford Bank, 115 Tenn. 64, 88 S.

W. 939, 112 Am. St. Rep. 817, 819, in which the court say that "as an original proposition we would not assent to the correctness of People's Bank v. Franklin Bank, * * * and think the great weight of authority is against it." Continuing, that court distinguishes the latter from the former case upon the same ground that we distinguish the Quitman Bank Case from the instant case; that is, the mere fact that a holder bank indorsed a forged check "previous indorsements guaranteed," for the purpose of sending it through regular banking channels for collection, does not of itself relieve drawee bank of its duty to carefully examine and discover if its customer's signature thereto is genuine, but drawee must further allege and prove that it paid the check without fault or negligence, and in reliance on such indorsements, which threw it off its guard, and further that holder bank paid the check under such facts and circumstances as would amount to negligence on its part. ·

We quote as follows from the Tennessee case: "It is negligence for a bank to pay a forged check drawn on it in the name of one of its customers whose signature is well known to it, where the cashier does not examine the signature closely, which would have disclosed the forgery, but is thrown off his guard by indorsements on the paper. * * * An indorser of a check does not warrant to the drawee, but only to subsequent holders in due course, the genuineness of the signature."

See the following authorities which support this conclusion: State Bank v. Cumberland Sav., etc., Co., 168 N. C. 605, 606, 85 S. E. 5, L. R. A. 1915D, 1138; Salt Springs Bank v. Syracuse Sav. Inst., 62 Barb. (N. Y.) 101; Germania Bank v. Boutell, 60 Minn. 189, 62 N. W. 327, 27 L. R. A. 635, 51 Am. St. Rep. 519; Howard v. Mississippi Valley Bank, 28 La. Ann. 727, 26 Am. Rep. 105; St. Albans Bank v. Farmers', etc., Bank, 10 Vt. 141, 33 Am. Dec. 188; 5 Cyc. 541; 7 C. J. p. 695, note 26; Am. Exp. Co. v. City Nat. Bank (Tex. Civ. App.) 7 S.W.(2d) 886, affirmed by Commission of Appeals, 16 S.W.(2d) 279.

Appellee further quotes, in support of its judgment, the following language of the Commission of Appeals in the Quitman Bank Case, supra: "Acceptance of the forged indorsement and putting it in circulation with a guaranty of integrity (Johnston v. Schnabaum, 86 Ark. 82, 109 S. W. 1163, 17 L. R. A. (N. S.) 838, 15 Ann. Cas. 876), obviously contributed, if it did not wholly cause, final payment."

■■ But that holding relates to forged indorsements, which issue is not involved in this case. Appellee neither alleged nor proved that the indorsements on the check in question were forgeries, and its suggestion that we may assume that they were from the

fact that the drawer's signature was a forgery and that the burden was on appellant who indorsed the instrument, "previous indorsements guaranteed," to negative these facts, is not tenable. We think it an indisputable proposition of law that, where one seeks to avail himself of an exception to a general rule of law and thereby avoid liability, he must allege and prove such facts and circumstances as will entitle him to the relief sought.

■ It is also worthy of note that, in the Quitman Bank Case, the bank first receiving the check paid it without exercising any diligence to identify the person to whom it paid the money. But in the instant case appellant bank did not pay the check, but placed the indorsement customarily used by banks sending checks for collection through regular banking channels, and sent it for collection. Appellee bank received and paid the check in due course of business, and 25 days elapsed between the date of payment and the discovery and notice to appellant of the forgery. So under these undisputed facts and circumstances the burden was upon appellee bank to allege and prove that holder bank had not paid out the money to the indorsers before it received notice of the forgery, or that, if it had paid out the money to the indorsers, it did so without exercising due care and diligence to identify the indorsers, rather than upon appellant bank to plead and prove payment to and inability to recover from the indorsers as is here contended by appellee. If this contention of appellees should be declared the rule, then the banking business would be extremely hazardous and difficult.

From what has been said herein, we reverse the judgment of the trial court, and here render judgment for appellant, and that appellee take nothing by its suit.

Reversed and rendered.