A. F. Geske, Plaintiff in Error, v. State Bank of Hey-
worth, Defendant in Error.

Gen. No. 8,780.

Opinion filed January 12,
1934.

H. M. MURRAY, for plaintiff in error.

WILLIAM R. BACH and WILLIAM J. BACH, for defendant in error.

MR. PRESIDING JUSTICE NIEHAUS delivered the opinion of the court.

A. F. Geske, the plaintiff in error, brought this suit in a justice court in McLean county, to recover the sum of $31.45, this being the amount of a check drawn on the defendant in error bank, which check he claimed was wrongfully paid by the bank and the amount thereof deducted from his deposit account in the bank. On appeal from the justice of the peace to the circuit court, the parties waived a trial by jury; and agreed upon the facts involved in this case, which were to be submitted to the court for determination of the issues. The stipulation of the parties concerning the facts is as follows:

"The defendant is now and has been for several years engaged in the general banking business at Heyworth, McLean County, Illinois, incorporated and organized in conformity with the General Banking Act of the State of Illinois.

"The plaintiff, A. F. Geske, a resident of Heyworth, Illinois, has had a checking account in the defendant's Bank for a long time prior to and since July 10, 1929, and during that time, plaintiff's wife was authorized to draw checks on defendant Bank and sign plaintiff's name to such checks, which she did to the particular check involved in this stipulation, intending to pay with it to the Illinois Public Utility Company, of Heyworth, Illinois, an installment on a range which plaintiff and wife had purchased of said company, and she left said 'check' at the office of said company with one of the employees, but neither the plaintiff nor his wife received credit for such payment and the books of said company do not show the receipt of the 'check' or credit to plaintiff or his wife for such payment.

"On July 12th, 1929, defendant Bank balanced plaintiff's bank book and delivered it to him with other cancelled checks in the usual and customary way.

"On an examination of his account with defendant Bank, as shown by his bank book and cancelled checks, the instrument hereto attached, and hereafter herein referred to as a 'check' dated July 10, 1929, for thirty-one dollars forty-five cents ($31.45) with plaintiff's name signed by his wife, drawn upon the defendant Bank and payable to................or order, without endorsement, and in the condition it now is, was among the checks cancelled and marked 'Paid' that were delivered to the plaintiff with his pass book. Plaintiff's bank book showed that defendant Bank had charged the amount of this 'check' to his account.

"Plaintiff took this 'check' to defendant Bank and inquired concerning the charging of the amount to his account, by the officers or employees of defendant Bank, and was informed by them that they could not tell who presented the check or to whom the amount was paid, but that it had been paid by the Bank to whomever had presented it to the Bank for payment. The bank books and cash for the date showed that the Bank had paid the check in full to the person who had presented the same for payment at the Bank, and the instrument itself was cancelled and marked 'Paid' on July 11, 1929, by the instrument or machine employed by the defendant Bank at that time in the usual course of business in the Bank, viz.: a stamp machine or check canceller, belonging to the Bank. That such instrument was not out of the Bank's possession; and was not used by any other person except the employees of the defendant Bank between the time of the execution and delivery of the check in question and its return to plaintiff with his pass book on July 12, 1929."

The record discloses that at the conclusion of the trial the defendant in error submitted three proposi-

tions of law to be held by the court, as the law governing the case; and the court held them to be the law as applicable to the facts. The propositions referred to are as follows:

"1. The court holds that a check drawn upon a bank and made payable to................or order is in legal effect payable to bearer.

"2. The court holds that when a check is drawn upon a bank and is made payable to..............or order the bank upon which it is drawn and which pays the check is not legally required to obtain the indorsement of the person to whom the money on the check is paid.

"3. The court holds that when the drawer of a check which was made payable to................or order, delivers the same to a third person, such check is a negotiable instrument payable to any person into whose hands such check may come, and it is not necessary that the blank be filled with the name of the person presenting such check for payment to the drawee bank before the bank can legally pay the same to such person nor that the person receiving the money therein indorse his name thereon."

The court thereupon rendered judgment against the plaintiff in error and his right to recover. The writ of error herein is prosecuted to reverse the judgment.

The question presented for review by the plaintiff in error is whether or not the facts embodied in the stipulation entitle the plaintiff in error to recover a judgment for the amount of the check referred to. The check in question was in the following form:

"Heyworth, Illinois, July 10, 1929, No.........
Heyworth State Bank 70–988
Pay to.............................or order $31.45
Make this Bank your Bank
Thirty one.........................45/100 Dollars
A. F. Geske."

It is evident from the facts embodied in the stipulation, that Mrs. A. F. Geske, the wife of the plaintiff in error, drew the check upon his account in the defendant in error bank, with full authority from her husband to do so; and that Mrs. Geske delivered the check to the Illinois Utility Company at its office in Heyworth, for payment of an instalment due the company on the price of a range which Mrs. Geske and her husband had purchased from that company; and that she handed the check to one of the employees of the company in the office of the company as she had repeatedly done before, for the purpose of having the company rubber stamp its name as payee in the check; and give credit to the parties accordingly. It was afterwards ascertained that neither the plaintiff in error nor his wife had received any credit on the books of the Utility Company for the amount of the check. Neither did the books of the Utility Company show that the check had been received by the company. On examination afterwards of the plaintiff in error's account in the defendant in error's bank, it was ascertained that the check had been charged to the plaintiff in error, thus reducing the amount in his account by the amount of the check. It was also ascertained from the bank that the check had not been rubber stamped by inserting the name of the Utility Company as payee; and that it had been presented through the bank by some person unknown to the bank, in due course of business; and that payment had been made to this unknown person; although the check did not contain the name of a payee; and after payment, the check was stamped as paid by the bank and canceled.

It is evident from the stipulated facts that the check in question was not payable to bearer and that it was not a negotiable instrument; and as such was paid by the bank in derogation of the provision of section 184 of the Negotiable Instruments Act, Cahill's St. ch. 98, ¶ 206, which provides:

"A check is a bill of exchange drawn on a bank payable on demand. Except as herein otherwise provided, the provisions of this Act applicable to a bill of exchange payable on demand apply to a check."

"A negotiable instrument must contain an unconditional acknowledgment of indebtedness or promise to pay, the amount and the person to whom it is to be paid must be certain, and it must appear from the face of the instrument to whom it is payable; and if resort to extrinsic evidence is necessary, the instrument is not negotiable." (*Equitable Trust Co. of New York v. Harger,* 258 Ill. 615.)

A question has also been raised concerning the payment of the check referred to by the bank, whether the unknown person to whom the defendant in error bank made payment, can be regarded as a legal holder in due course. This question, however, is well settled by the courts of review of this State, by the following authorities: *Cosmopolitan State Bank v. Lake Shore Trust & Savings Bank,* 343 Ill. 347; *Jackson v. National Bank of McMinnville,* 92 Tenn. 154; *National City Bank of Chicago v. National Bank of Republic of Chicago,* 300 Ill. 103; *Crahe v. Mercantile Trust & Savings Bank,* 295 Ill. 375; *Chicago Savings Bank v. Block,* 126 Ill. App. 128, 131; *People v. Bank of N. America,* 75 N. Y. 547; *Tolman v. American Nat. Bank,* 22 R. I. 462, 52 L. R. A. 877.

In *Cosmopolitan State Bank v. Lake Shore Trust & Savings Bank,* 343 Ill., *supra,* our Supreme Court, quoting with approval the language used by the Supreme Court of Tennessee in *Jackson v. National Bank of McMinnville,* 92 Tenn. 154, makes the following comment which is pertinent to the question under consideration:

"A bank is obliged by custom to honor checks payable to order and pays them at its peril to any other than the person to whose order they are made payable.

It must see that the check is paid to the payee therein named upon his genuine indorsement or it will remain responsible.

"No equitable considerations can be invoked to soften seeming hardships in the enforcement of the laws and rules fixing liability on persons handling commercial paper. These laws are the growth of ages and the result of experience, having their origin in necessity. The inflexibility of these rules may occasionally make them seem severe, but in them is found general security."

Considering the authorities cited, and applying them to the facts set forth in the stipulation, we reach the conclusion that the trial court was in error in its holding the law to be as presented in the three propositions of law hereinbefore set forth; and in rendering a judgment in conformity therewith, against the right of the plaintiff in error to recover in this case. The judgment is therefore reversed; and it is ordered that the plaintiff in error recover a judgment in this court; and that the same be entered for the sum of $31.45, the amount of the check in controversy.

Judgment of the trial court reversed; and judgment rendered in this court.

*Reversed and judgment here.*