MASSACHUSETTS BONDING & INS. CO. v. PITTSBURG PIPE & SUPPLY CO. et al.

No. 3883.

Court of Civil Appeals of Texas. El Paso.

Dec. 7, 1939.

Rehearing Denied Jan. 11, 1940.

Chrestman, Brundige, Fountain, Elliott & Bateman, of Dallas, for appellant.

H. P. Smead and Earl Roberts, both of Longview, for appellees.

PRICE, Chief Justice.

Massachusetts Bonding & Insurance Company, hereinafter referred to as plaintiff, instituted this action in the District Court of Gregg County, Texas, against Pittsburg Pipe & Supply Company, hereinafter called Supply Company, I. G. Futoransky, hereinafter called Futoransky, and Charles E. Wair. Plaintiff sued as the assignee of the First National Bank of Longview, Texas. It sought recovery of the sum of $2,020, alleging this amount was the amount paid by its assignor on two forged checks drawn against the account of Vivian Church and paid therefrom by its said assignor, and on ascertainment of the forgery credited back to the account of Miss Church. The forgery of the checks was alleged to have been committed by Wair; that in the case of the $2,000 check Wair forged the name of Vivian Church, leaving the name of the payee blank; that the defendant Supply Company, acting through its duly authorized agent, Futoransky, filled in the blank left for the payee with the word "cash," presented same to the assignor, and upon defendant Futoransky endorsing same, received cash therefor. It charged that Futoransky and the Supply Company owed a duty to the assignor bank · before presenting such checks for payment of inquiring of the purported drawer thereof as to what authority had been given to fill in the name of the payee; that had such inquiry been pursued with reasonable diligence it would have been discovered that the checks were forged; that by reason of the negligence of said Futoransky and the Supply Company. plaintiff's assignor suffered a loss of $2,020; that the said Futoransky and the Supply Company were guilty of negligence in not inquiring how Wair came into possession of the checks, or either of them, or as to what authority he might have to fill in the blanks therein or negotiate same. Relief was also sought on the grounds of mutual mistake and on doctrine of unjust enrichment.

Futoransky answered by general denial and plea of negligence on the part of the assignor bank in cashing the check, and that he was a bona fide purchaser of the checks in good faith.

Defendant Supply Company answered by general denial, set up negligence on the part of the assignor bank; further, if Futoransky accepted, signed or altered the checks he did so on his own responsibility and not as its agent; further, that it was a bona fide purchaser for value of the said checks.

Wair did not answer and judgment by default was rendered against him. This part of the judgment has not been appealed from.

The trial was before the court and resulted in a judgment against the plaintiff as to the two answering defendants. Plaintiff duly perfected appeal and the case is here for review.

It is here without findings of fact or conclusions of law by the trial court, as none were requested. Under the law it is implied that all essential facts were found by the court in such a manner as to support the judgment. In other words, we are not warranted in disturbing same if under any theory there is evidence in support thereof.

There is little dispute as to the facts. Prior to the cashing of the $2,000 check by the Bank, Wair had been negotiating with

Futoransky, who was an agent and employee of the defendant Supply Company, for the purchase of machinery and supplies for drilling an oil well. It was finally agreed between Wair and Futoransky, acting on behalf of his principal in the scope of his authority, that upon Wair paying $1,500 in cash, the Supply Company would sell and furnish him at a price of $4,500 the material and machinery desired, the balance to be paid in the manner and to the extent in the contract agreed. There was a delay of several days, but thereafter Wair appeared at the office of Futoransky with the $2,000 check in question. This check purported to be drawn on plaintiff's assignor by Vivian Church. Wair delivered this check to Futoransky. After the contracts were drawn up and completed Futoransky, accompanied by Wair and another, went to the bank, endorsed the check, received therefor $500 in cash which he delivered to Wair. Fifteen hundred dollars he received in the form of a cashier's check payable to Supply Company. After receipt of the money and the check Futoransky delivered to Wair the contract in question and immediately thereafter the machinery and supplies mentioned in the contract were delivered by the Supply Company to Wair. Before paying the check the teller of the assignor Bank did not examine the signature card of Vivian Church to see how it compared with the signature on the check. The forgery of the signature was a rather skilful one.

The fact as to which there is a question as to its establishment is as to when and by whom the word "cash" was written in the $2,000 check. Plaintiff assumes that the evidence establishes to the extent that minds of reasonable men cannot differ as thereto that it was written by Futoransky after the check was delivered to him by Wair and before same was presented to the Bank. Defendants assert that it was an issuable fact as to when or by whom the blank was filled; that the evidence was sufficient to justify a finding by the court that the word had been written in before the check was delivered to Futoransky and without his knowledge. Further, that this Court should attribute such a finding to the trial court if it is necessary to support the judgment rendered.

The only solution of this controversy is to examine the evidence as shown by the record. Futoransky testified by deposition and in person at the trial. In substance he said he did not remember whether the space was blank at the time he received the check; he did not remember for sure whether he filled in the blank—he might have done so; he would not say under oath that he did not do it; that he did not know in whose handwriting the word "cash" was; he did not know whether it was his or not—it could be his handwriting—he would not say it was not. In regard to the $20 check he said he remembered writing in the word "cash." Witness examined the $20 and the $2,000 check and said the word "cash" as it appeared in each check looked, as to handwriting, a good deal alike.

Witness Robbins said he saw Wair deliver to Futoransky the $2,000 check in question on the same afternoon it was cashed; did not see the face of the check; did not see Futoransky do anything but endorse the check.

Witness Lawrence Skipper, an agent for the plaintiff, said Mr. Loftis, President of the Bank, called him up about the forgery when same was discovered, and that that same day an investigation was made about the forgery. In the course of the investigation he was present at a conversation with Mr. Futoransky, Mr. Loftis, Mr. Taylor and Mr. Davis; that Futoransky said the $2,000 check was blank as to the payee when delivered; he further said he (Futoransky) had written the word "cash" in the $2,000 check. Mr. Loftis, the President of the Bank, testified as to this conversation. He said according to his best recollection he called Futoransky's attention to a difference in the letter "C" as it appeared in the name Church signed to the $2,000 check and the letter "c" in the word "cash" therein; that as he remembered, Futoransky said he wrote the word "cash" in the $2,000 check. Witness Walter W. Davis, employed as an adjuster in this matter for plaintiff, said that he was present at the said conversation. Witness said Futoransky stated he wrote the word "cash" in the $2,000 check. Futoransky, called to the stand as a witness for defendant, did not deny the statement as to his declarations testified to by these three witnesses. He was not interrogated with reference thereto by his attorney. It was as to a matter in his knowledge unless, perchance, he again did not remember.

We believe that as to the defendant Futoransky, under the testimony as above narrated, the minds of reasonable

men cannot differ as to the fact that he did write the word "cash" in the $2,000 check before the presentation thereof for payment. It is possible that shortly after the discovery of the forgery he might have said he did write the word in the check when he had not done so. This is possible, but hardly reasonably probable. It is likewise possible that the testimony of the three witnesses that he said he did so is incorrect. If it be incorrect, he did not challenge their statements that he did make this statement.

The $2,000 check is an ordinary bank check, dated December 7, 1937. To the left of the space for filling in the name of the payee are the words "Pay to the order of." In this space the check as introduced in evidence had the word "cash." The check was in the sum of $2,000, and purported to be signed by Vivian Church.

■ Plaintiff, in the very beginning of his argument, makes this statement: "To save time and avoid unnecessary argument, appellant admits that the general rule, under the decisions in this State, is that a bank is presumed to know the signatures of its depositors, and, if a forged check is accepted and paid, the bank, as a general rule, will not be heard to assert a mistake as to the signature. However, there is a clearly defined and well established exception to that general rule, which is that if the party receiving the money on the forged check has in any way contributed to the success of the fraud or to the mistake of fact under which the payment is made, or if the loss can be traced to the fault or negligence of the party receiving the money, then the loss should fall upon him, rather than upon the bank which paid out the money on the forged check in good faith and without actual negligence on its part."

Plaintiff cites in support of this argument the case of Rouvant v. San Antonio National Bank, 63 Tex. 610. In our opinion the case supports plaintiff's general proposition with the exceptions thereto. The case cites and recognizes the doctrine laid down in Price v. Neal, 3 Burr. 1354. In Rouvant v. San Antonio National Bank, supra, the payee of the check knew that another than the purported drawer signed the name of the purported drawer to the check. In view of these circumstances it was held that the payee was liable to the drawee for the amount paid out on the forged signature of the depositor. The Rouvant case has been frequently recognized as establishing the rule and the exceptions thereto. First Nat. Bank of Winnsboro v. First Nat. Bank of Quitman, Tex.Com.App., 299 S.W. 856; First Nat. Bank v. First Nat. Bank, Tex.Civ..App., 37 S.W.2d 802, writ refused; Citizens' Nat. Bank v. San Angelo Nat. Bank, Tex.Civ. App., 19 S.W.2d 388; 12 A.L.R. 1114; 71 A.L.R. 343.

Now the gravamen of plaintiff's complaint is that Futoransky wrote the word "cash" in the blank space in the check, then endorsed same and received the cash therefor. It is asserted that before doing so it was his duty to have sought out the drawer and ascertained if she had given Wair this authority. If this contention is correct, such an investigation would have most certainly led to the discovery of the forgery.

■ Section 14 of Article 5932, R.S. 1925, is called to our attention. This section provides for the filling in of blanks in instruments. We believe it has no direct application here. First, because it is not sought to enforce the check as such against any party thereto before or after completion; second, this check, on the theory of both parties, was never delivered by the purported drawer either before or after it was prima facie completed. It was a forgery. The action of the parties could not and did not give legal vitality thereto as such. See sec. 23 of Article 5932, R.S. 1925. There is no question of ratification or estoppel in the case. Futoransky did not endorse same for the purpose of negotiation. The Bank, by virtue of paying out its depositor's money thereon acquired no interest therein as a negotiable instrument. First Nat. Bank v. Talley, 115 Tex. 591, 285 S.W. 612.

The cases, however, use the expression "holder in due course." We have presumed that that refers to one who purchased the instrument in good faith, paying value therefor. If the Supply Company and Futoransky sustained the relation of innocent purchasers to the forged check in question, the rule of Price v. Neal, supra, operates in their favor. However, the rule as to filling in blanks in instruments laid down by the Article referred to does have important bearing on the issue as to whether defendants were holders in due course or innocent holders within the rule of Price v. Neal and the qualifications thereof.

■ Eliminate the word "cash" from the check and it does not purport to be a complete negotiable instrument. There was no payee. See secs. 8 and 9 of Art. 5932, R.S. 1925; 10 C.J.S., Bills and Notes, p. 826, § 328b; Brannan's Negotiable Instrument Law (Chafee), 4th Ed. p. 116, sec. 14; Geske v. State Bank, 273 Ill.App. 294; City Nat. Bank of Galveston v. American Express Co., Tex.Com.App., 16 S.W.2d 278.

One cannot be a holder in due course unless the instrument is complete and regular upon its face. Sec. 52, Art. 5935, R.S. 1925; Sec. 14, Art. 5932, R.S. 1925; 8 Am.Jur. p. 130, Sec. 396; Moore v. Vaughn, 167 Miss. 758, 150 So. 372; Columbia River Door Co. v. Timms, 127 Or. 227, 271 P. 607.

■ The above are also authorities for the proposition that one purchasing an incomplete instrument is put upon inquiry as to the authority of his transferrer to complete same.

■ With the check reading "Pay to the order of cash," what did it purport to be? It was not payable to order as specified in Sec. 8 of Art. 5932. If it purported to be a negotiable instrument it must be such under subsection 4 of sec. 9 of Art. 5932. "Sec. 9. The instrument is payable to bearer; * * * 4. When the name of the payee does not purport to be the name of any person." The check so written then purports to be payable to bearer.

■ When Futoransky wrote in the word "cash" in making the check appear to be payable to bearer he was put upon inquiry as to the authority delegated from Vivian Church to do so. It is not asserted that he made any such inquiry. The primary source of investigation would, of course, have been Vivian Church, but nothing was done in that line. The conclusion is inevitable that Futoransky was guilty of negligence as to the drawee. This negligence was a positive act of negligence. It consisted in altering the instrument so as to make it purport to show that it authorized and required the Bank to pay to him the amount called for by the check. By his own voluntary act he made the instrument a purported completed negotiable instrument. Had he pursued the course of investigation suggested by the circumstance it would have almost certainly led to the discovery of the forgery or the prevention of the consequences thereof to the Bank.

Let us consider briefly the status of defendant Futoransky with reference to this check upon the assumption that the word "cash" was written therein before same was delivered to him. Subsection 3 of Sec. 52 of Art. 5935 provides as to a holder in due course: "That he took it in good faith and for value." Under the undisputed evidence up to the very moment this forged check was cashed, neither Futoransky, individually, nor on behalf of his principal, parted with anything. These defendants, from the inception of the transaction that gave rise to this controversy to this time, have taken the consistent position that they refused and did not do anything until the $1,500 in cash came into the hands of the Supply Company. Until this was done nothing was parted with. As to the balance of the check in the sum of $500, it cannot be disputed that at all times the real title was in Wair. His right was recognized by the delivery of $500 of the proceeds of the forged check to him by Futoransky. To this extent, although innocently, Futoransky acted as the agent of the forger. In truth and in fact we think that his relationship throughout was that of a collecting agent. In order to further the interest of his principal he personally extended aid to a customer in the matter of cashing the check. His action was taken in the presence of the customer. If he paid anything for the check it was out of the proceeds thereof. Until the contract of his principal was delivered, Wair was at all times the equitable owner of the check. Wair, to all intents and purposes, did pay him in money. Futoransky was merely the collecting agent. Lanier v. Nash, 121 U.S. 404, 7 S.Ct. 919, 30 L.Ed. 947. However, we think that a mere collecting agent comes within the protection of the principle of Price v. Neal. With reference to collecting banks it has been so held. Citizens' Nat. Bank of Odessa v. San Angelo Nat. Bank, Tex.Civ.App., 19 S.W.2d 388.

Under all the facts and circumstances surrounding the transaction, assuming that the word "cash" was written in the check at the time it was delivered to Futoransky, we can see absolutely no ground to hold him negligent in presenting for payment and receiving payment of same from the Bank.

■ Let us revert—though perhaps out of order—again to the question of authority

to fill in the blank. This was an uncompleted instrument, under the evidence, at the time Futoransky received same. In order to bind Vivian Church the payee must be specified strictly in accordance with the authority delegated from her. It is suggested that the instrument itself purports to give that authority. It occurs to us that this contention is not valid. If she desired it to be a "bearer" instrument, substitution of the word "bearer" for the word "order" in it would have made it such. Our construction of the instrument is that it would only give authority to fill in a personal, as distinguished from an impersonal, payee.

It is necessary to dispose of the $20 check. The principles heretofore announced herein are applicable to that check. There is no dispute that Futoransky wrote the word "cash" in that check. He knew and intended that the Bank should pay the check. It did pay the check. We hold Futoransky is liable to plaintiff in the amount of both checks. Under the undisputed facts the liability of the Supply Company as to the $20 check cannot be asserted. It did not receive the proceeds of same—it was not done in furtherance of its business.

Let us now consider as to the liability of the defendant Supply Company as to the $2,000 check. Futoransky was employed by the Supply Company to sell or rent oil well machinery and supplies. There is no evidence that it was contemplated that he should assist the customers of his employer in cashing checks. We think the transaction, that is, the filling in of the blank in the $2,000 check was out of the scope of his employment. Further, in so doing, he did not purport to act for his employer in the matter of the check transaction. In our opinion the Company was not charged with notice of his acts with reference to the check.

But there are other facts to be taken into consideration in determining the liability or non-liability of the Supply Company in this case. It received and retains $1,500 of the proceeds of the money wrongfully obtained from the Bank. However, it seems beyond dispute that it has changed its position since the receipt of such sum. After the receipt of this money it furnished Wair the machinery and supplies covered by the contract. The evidence seems to indicate that this was done before it had any notice as to the wrongful acquisition of this money by Wair or Futoransky. If it is to be held, it must be held under the doctrine of ratification by retention of the $1,500.

Ordinarily, an act to be ratified must purport to be done on account of the principal. Eardley Bros. v. Burt, Tex.Civ. App., 182 S.W. 721.

If after the commission of an unlawful act by an agent from which the principal receives benefit, but before having notice thereof, the principal has so changed his position that it is inequitable to require him to return the proceeds, there is no ratification by the retention of the benefits. Arkansas Valley Bank v. Kelley, 176 Ark. 387, 3 S.W.2d 53, 58 A.L.R. 808; Guaranty Bank & Trust Co. v. Beaumont Cadillac Co., Tex.Civ.App., 218 S.W. 638; Case v. Hammond Packing Co., 105 Mo.App. 168, 79 S.W. 732.

We believe that the judgment of the trial court was correct as to the defendant Supply Company.

It is ordered that as to the defendant Pittsburg Pipe & Supply Company, the case be in all things affirmed; as to the defendant Futoransky, that the case be reversed and here rendered in favor of the plaintiff in the sum of $2,020.