MARLIN NAT. BANK v. REED et al.

No. 14402.

Court of Civil Appeals of Texas.

Fort Worth.

June 26, 1942.

Rehearing Denied Sept. 11, 1942.

L. J. Wardlaw, of Fort Worth, and Cecil R. Glass, of Marlin, for appellant.

Arthur Haddaway, of Fort Worth, and Malone, Lipscomb, White & Seay, of Dallas, for appellees.

SPEER, Justice.

Tom S. Reed of Falls County, Texas, filed this suit against Marlin National Bank, to which we shall refer as Bank, and Texas Pacific Coal & Oil Company, to which we shall refer as TP, the manner in which it is designated in some of the testimony.

Reed sought recovery of $1,392.50, the aggregate amount of a series of 15·checks represented by forged instruments against his account on deposit with the Bank, and paid by the Bank, and for which amount TP received the benefit.

The Bank filed a cross-action against TP upon two grounds. (1) Because the forgeries were committed by one Schrader as agent of TP while in the discharge of his duties as such agent and within the scope of his authority, and (2) because TP received no title to the proceeds of said forged checks and therefore was unlawfully withholding money which belonged to the Bank as custodian for Reed.

TP answered, denying that Schrader was acting within the scope of his agency in forging the checks involved, but that Reed was a customer of TP who bought petroleum products in wholesale lots from it, and that it being Schrader's duty to collect for said merchandise, the checks were sent to TP by Schrader, in due course of business, in payment of the products so purchased by Reed, and that its position has changed for the worse by the acceptance and payment of said checks by the drawee Bank. TP filed a cross-action against the Bank, conditioned that if Reed should re-cover against it in his original action, then that TP have judgment against the Bank for such amount as shall be recovered by Reed against TP. In said cross-action TP alleged in substance that it had accepted the several forged checks within a short time after each was drawn and immediately deposited same with a Fort Worth bank for collection from the drawee, the Bank in this case. That Reed was a director in the Bank and a regular depositor there; that the Bank was negligent in paying said forged checks and charging same to the account of Reed, its depositor, and as a result of said negligence, TP would lose the amount of payment for its petroleum products previously sold to Reed, for which the forged checks were given by Schrader, if required to return the proceeds so received by it.

The case was tried to the court without a jury. The court filed findings of fact and conclusions of law. The fact findings are not challenged by either party. Upon the facts so found the court entered judgment in favor of Reed against the Bank for the amount of 14 checks found to have been forged, and for the amount one other check was raised from what it originally provided for. No recovery was allowed Reed against TP. Judgment was also denied the Bank in its cross-action against TP and because TP's cross-action against the Bank was conditioned upon a recovery by Reed against it, and this relief being denied, the judgment allowed no recovery by TP against the Bank on the former's conditional cross-action. The Bank alone has appealed.

As we view this appeal, the material facts found in the record are substantially: That during the period of time involved, Reed was a director in the Bank, but not active in its operation, except as a director; he had been a depositor for many years, was a man of considerable means, owning 600 acres of land and other property; his total worth was estimated by another official of the Bank to be approximately $100,-000. Reed operated a small store and sold petroleum products in connection with his business. TP had an agent, one Schrader, at Marlin, Texas, authorized to sell its products in a prescribed area. Schrader made requisition to TP from time to time for such merchandise as he desired; he was authorized to sell his employer's goods in bulk or wholesale, for cash or on credit, to customers whose rating had been ap-

proved by the home office. Tom S. Reed had been approved by TP as one to whom Schrader could sell on credit. Schrader would have Reed to sign a ticket when merchandise was delivered, indicating the amount of such delivery. The tickets signed during the month would be sent to the home office of TP by Schrader, and the account made up and returned to Schrader for collection and remittance when collected to the home office. Schrader was paid a commission on products sold and collected for. Late in September, 1939, Schrader began a system of embezzlement and forgery; his scheme appears to have been that he would sell the products to Reed, take signed tickets as above pointed out, send them to TP and get the monthly account back. After deducting from the account his personal bill for groceries purchased, receive the remainder in cash, appropriate the cash to his own use and write a check on the Marlin Bank, where he knew Reed carried his account, forge Reed's name to the check, made payable either to TP or to some other person, and send to TP in settlement of Reed's account. If he made a check payable to a third person he would forge the endorsement of payee before sending it to TP, ostensibly in payment of the amount due by Reed to TP. The company received the checks from Schrader without knowledge of Schrader's fraud and endorsed each with a rubber stamp, "For deposit only", and deposited them with a Fort Worth Bank for credit or collection, in the usual channels of banking, from the drawee bank at Marlin, Texas. The Bank accepted ·and paid each of the checks and charged them to the account of Reed. Trial court found as a fact that Schrader was not acting within the scope of his employment by TP when he committed the forgeries and perpetrated the frauds involved in this case. Although the forgery of Reed's name was cleverly done, the Bank continued paying them over a period of about nine months. The first forged check was for $137.84, dated September 9, ˋ1939, and was paid by the Bank on October 7, 1939. In each instance, the Bank appears to have paid the check within a few days after its date, perhaps about a sufficient time for it to go to Fort Worth and be deposited by TP and go through the usual channels before presentation to the Marlin Bank. There were one or more such transactions each succeeding month until when the last check was drawn, on July 5, 1940, and was cashed by the Bank

on July 10, 1940. There was one check which was in fact legally signed by Grady Reed, a son of Tom S. Reed, payable to TP, dated 4–23–1940, for $49.13, that had been raised by Schrader from its original amount of $41.13, both in the figures and the written part. The trial court found this was crudely done and that the Bank should have detected it. A photostatic copy of the check supports the court's finding. Reed had not called for nor received his canceled checks from the Bank during the period covered, but late in July or early in August, became anxious about the condition of his account, investigated and found his balance to be less than he had expected. An investigation by him and the cashier of canceled checks led to the discovery of the forgeries. Shortly after the discovery Schrader was arrested and confessed all. Demand was made by Reed upon TP for repayment of the amounts received on the checks. When payment was refused, Reed instituted this suit. The record discloses that there is no real controversy between Reed and the Bank—that the Bank is prosecuting the suit against TP at its own expense and will, in the end, hold Reed harmless from loss.

The Bank presents one point as a basis for reversal of the judgment entered. It reads: "The court erred in entering judgment that Marlin National Bank, appellant, take nothing by its suit on its cross-action against appellee Texas Pacific Coal & Oil Company for the amount of the forged checks in controversy."

The Bank relies largely upon the holdings in First Nat. Bank of Walnut Springs v. Farmers' & M. State Bank of Ballinger, Tex.Civ.App., 146 S.W. 1034, writ dismissed; Fidelity & Deposit Co. of Maryland v. Fort Worth Nat. Bank, Tex.Com. App., 65 S.W.2d 276; First Nat. Bank of Winnsboro v. First Nat. Bank of Quitman, Tex.Com.App., 299 S.W. 856, and other cases which have discussed them.

As we read those cases, it appears to us that they were decided upon a state of facts materially different to those before us. They seem to have turned upon the point that the payee banks paid forged instruments and charged them to their depositors and the drawer received the proceeds from payment and thereafter held monies as "had and received" under circumstances in which, if they had been compelled to refund the money, they would be in no worse position than they were before they re-

ceived it. Illustrative of this is the language used in the first case cited [146 S. W. 1036]: "It is immaterial that the plaintiff [drawee bank] was negligent [in paying the forged instrument], because it does not lie in the defendant's mouth to say to the plaintiff: 'While I had no right to the money, I have a right to keep it because, if you had exercised proper care and diligence, I would not have obtained it.'" It will also be noted that in the cases so relied upon by the Bank, the parties sought to be held had guaranteed all previous endorsements. The holdings above referred to are ably discussed, and, we think, properly disposed of in Citizens' Nat. Bank of Odessa v. San Angelo Nat. Bank, Tex.Civ.App., 19 S. W.2d 388, writ dismissed. No useful purpose could be served by a lengthy quotation therefrom by us.

We think the rule laid down in First Nat. Bank of Wichita Falls v. First Nat. Bank of Borger, Tex.Civ.App., 37 S.W.2d 802, writ refused, more nearly covers the situation before us than those cited above. The principal point there determined was that a drawee bank (Marlin Bank in our case), by accepting and paying forged checks purporting to be checks of its depositor, is guilty of negligence precluding a recovery against a collecting bank (standing in place of TP here) although collecting bank (TP here) was negligent in failing to obtain identification of the party cashing the check. In the instant case there is no question involved of the good faith of TP in accepting from Schrader the forged checks and that a valuable consideration passed. It was not alleged, nor is it here contended by the Marlin Bank, that it was misled or thrown off guard in accepting the forged instruments. Nor does it allege or contend that any act of TP caused it to accept and pay the forged instruments. Nor does it purport to offer any excuse for having made the mistake of not detecting the forgery. It is apparently the well settled rule that a drawee bank is charged with knowledge of the genuine signature of its depositors; the great length of time Reed had been a depositor with this drawee, the magnitude of Reed's checking account and his intimate association with the institution emphasize the application of the rule to the facts of this case. The exceptions to this rule as pointed out in the cases relied upon by the Bank in this appeal were not pleaded and if they had been they would have found no support in the testimony.

The rule upon which "moneys had and received" is predicated is inapplicable to this case, because it cannot be said that the negligence of the Bank as drawee in failing to detect the forgery of this series of checks covering the long-drawn-out period of about nine months, did not place TP in a worse position than it would have been but for such failure by the Bank. This for the reason it is obvious that if the Bank had detected the first item of forgery in September or October, 1939, the remaining 14 items between that date and the following July, 1940, would not have occurred and TP's losses thereunder would not have been sustained by it.

We think the cases discussed support the judgment entered by the trial court. In addition to those mentioned, the following authorities are applicable to the situation before us. 7 C.J. 688 to 690, sect. 417; 9 C.J.S., Banks and Banking, § 357, and authorities cited; 12 A.L.R. 1091; 71 A.L.R. 337; 121 A.L.R. 1056, and notes under each; cases cited in 6 Tex.Jur., pages 303 to 305, §§ 154 and 155.

We hold that the judgment of the trial court was proper under the facts presented. It is therefore affirmed.