**FIRST FEDERAL SAVINGS AND LOAN
ASSOCIATION OF SAN AN-
TONIO, Appellant,**

v.

**NORTHSIDE STATE BANK, Appellee.**

No. 14714.

Court of Civil Appeals of Texas.

San Antonio.

Jan. 8, 1969.

Delno Grosenheider, House, Mercer, House & Brock, Austin, for appellant.

Wiley & Plumb, Lewin Plunkett, San Antonio, for appellee.

KLINGEMAN, Justice.

Suit by First Federal Savings and Loan Association of San Antonio, plaintiff below and appellant herein, against Northside State Bank, defendant below and appellee herein, for restitution for money paid under a mistake of fact, and alternatively for damages for appellee's negligence in failing to verify the signature of Mrs. Hilda Rolapp. Trial was to a jury who found that the failure of appellee to ascertain the genuineness of the signature of Mrs. Rolapp before paying out money on said signature was negligence, and that such negligence was the proximate cause of the loss involved. The jury found that appellant was not guilty of any negligence in its actions.[1] Appellant's motion for judgment was denied and appellee's motion to disregard the jury's findings and for judgment non obstante veredicto was granted by the trial court, and judgment entered that appellant take nothing.

To sustain the action of the trial court in granting judgment non obstante veredicto, it must be determined that there was no evidence having probative force upon which the jury could have made the findings relied upon, Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194 (1952); Goodloe v. Williams, 302 S.W.2d 235 (Tex. Civ.App.—Texarkana 1957, writ ref'd), and upon an appeal from a judgment non obstante veredicto it is the duty of the appellate court to determine if there is evidence of probative force to support the jury's answers, and in so doing the court must consider evidence in the light most favorable to appellant, disregarding conflicts in evidence and indulging reasonable intendments deducible from evidence in favor of appellant and against judgment non obstante veredicto. Whaley v. Peat, 377 S.W.2d 855 (Tex.Civ.App.—Houston 1964, writ ref'd n. r. e.); Zachry v. McKown, 326 S.W.2d 227 (Tex.Civ.App.—Austin 1959, writ ref'd n. r. e.); 4 Tex.Jur.2d, Appeal and Error, § 841.

Mrs. Hilda Rolapp maintained a savings account at First Federal for many years. At the outset of the transactions involved in this lawsuit, she had a balance in said account in excess of $3,700.00. In November, 1966, Mrs. Rolapp went to First Federal to have her savings passbook, being "Acc't No. 0–16148," brought up to date. At such time, it was noted that the passbook she presented had various entries therein made with a typewriter rather than posted with a posting machine. There was also evidence of some erasures and alterations on said passbook. An investigation revealed that the passbook tendered by Mrs. Rolapp was actually passbook No. 34371,

---

1. "SPECIAL ISSUE NO. 3

Do you find from a preponderance of the evidence that the plaintiff represented to the defendant that the signature of Hilda Rolapp on the assignment of July 29, 1965, was genuine?
 Answer 'Yes' or 'No'
 We, the jury, answer: No."

"SPECIAL ISSUE NO. 6

Do you find from a preponderance of the evidence that the plaintiff failed to properly check the assignment of July 29, 1965, against their signature card?
 Answer 'Yes' or 'No'
 We, the jury answer: No."

"SPECIAL ISSUE NO. 9

Do you find from a preponderance of the evidence that the plaintiff failed to properly check the signatures of Hilda Rolapp on the withdrawal requests against their signature card?
 Answer 'Yes' or 'No'
 We, the jury, answer: No."

issued in the name of H. R. Rollen, which account was opened in the year 1965 with a deposit of $5.00, and that said name and number had been erased on such passbook and Mrs. Rolapp's name and number inserted therein. Such passbook showed a balance of approximately $3,700.00. Upon checking Mrs. Rolapp's ledger account it was ascertained that the balance in her savings account was approximately $7.00.

The transactions involved in this lawsuit commenced in July, 1965, when appellant received a letter from appellee dated July 29, 1965, directed to the attention of Mr. John Crossland, which stated that the customer (Hilda Rolapp, A/C # 0–16148) had pledged the amount of $1,800.00 as collateral on a note at Northside State Bank. Such letter states that the savings passbook is in possession of Northside and will be returned upon payment of the loan in full, and requests acknowledgment of receipt of such letter. Such letter is signed by an officer of Northside. First Federal acknowledged receipt of such letter by a notation on the accompanying copy of such letter, on July 30, 1965. It is to be noted that the letter of Northside does not state that such assignment is enclosed, nor is there any request for verification of signature in this letter. Subsequently, under date of August 26, 1965, Northside again wrote First Federal, stating that it was enclosing "savings pass book and letter of authority to withdraw $600.00 from Mrs. Hilda Rolapp's account No. 0–16148 and make check payable to Northside State Bank. Please return pass book along with check at your earliest convenience." Accompanying said letter was a letter addressed to "North Side State Bank" signed "Hilda Rolapp," with a notary's seal and a notary's signature thereon. This letter states in part: "This is your authority to transfer $600.00 from my savings account at First Federal Savings in San Antonio, Texas. You now have my pass book as assignment on loan in your bank." Pursuant to such request, First Federal sent a check payable to Northside State Bank in the amount of $600.00. Subsequent thereto, by similar requests, additional withdrawals of $480.39, $500.00, and $300.00 were made from Mrs. Rolapp's account, totalling $1,-280.39. One of these checks sent by First Federal was made payable to Northside State Bank, and two to Northside State Bank, "Credit acct. of Hilda Rolapp." On October 27, 1966, Northside wrote First Federal that they wished to execute their assignment on the savings account of Hilda Rolapp number 0–16148; that the initial assignment, dated July 30, 1965, was in the amount of $1,800.00, and on October 17, 1966, Northside received from Mrs. Hilda Rolapp an additional assignment authorizing them $400.00 as security. They requested First Federal to make the check payable to "Northside State Bank in the amount of $1,966.54, which is the total amount of money due the bank." There was enclosed with such letter the savings passbook and a letter signed "Hilda Rolapp" addressed to Northside State Bank, authorizing Northside to withdraw $400.00 from her savings account. This letter, like the previous letters, contained a notary's signature. Pursuant to this request, First Federal issued their check, dated Oct. 27, 1966, payable to Northside State Bank in the amount of $1,966.54. The total of these withdrawals from Mrs. Rolapp's account aggregated $3,846.93, leaving a balance in her account of $7.66. Mrs. Rolapp testified that she did not sign any of the instruments or letters involved and had no knowledge of them; that she had never received any of the money withdrawn from her account or any benefits therefrom; that she had never been in the Northside State Bank and had had no business dealings with them. There is testimony in the record that all of the instruments involved had proved to be forged instruments which were perpetrated by one Al Meyer, a nephew of Mrs. Rolapp. Pursuant to the demands of Mrs. Rolapp to restore her account in the amount it had been depleted by such withdrawals, First Federal re-established her savings account in the amount of $3,820.41.

Appellant asserts that the trial court erred in denying its motion for judgment upon the jury's findings, since such findings are supported in the record by ample probative evidence, and in granting appellee's motion to disregard the jury's findings and granting judgment non obstante veredicto.

Appellee asserts there is no evidence to support the jury's findings, and that irrespective of the jury's findings it is entitled to a take-nothing judgment as a matter of law. In support of this contention, appellee relies upon the general rule enunciated in Price v. Neal, 3 Burr. 1354; Marlin Nat. Bank v. Reed, 164 S.W.2d 260 (Tex.Civ.App.—Fort Worth 1942, writ ref'd w. o. m.); First Nat. Bank v. First Nat. Bank, 37 S.W.2d 802 (Tex.Civ.App.—Amarillo 1931, writ ref'd); Citizens' Nat. Bank v. San Angelo Nat. Bank, 19 S.W.2d 388 (Tex.Civ.App.—Austin 1929, writ dism'd), to the effect that a bank in accepting and paying a draft drawn by a customer is generally held to know the signature, and if a forged draft is accepted and paid, the bank as a general rule will not be heard to assert a mistake as to the signature.

To this general rule there are certain exceptions. As early as 1895, our Supreme Court in Rouvant v. San Antonio National Bank, 63 Tex. 610, held that the rule that the bank paying a forged check which on its face appears to have been drawn by one of its customers will not be heard to assert a mistake as to the signature, is applicable only to cases where the party who received the money on the check has in no way contributed to the consummation of the fraud, or to the mistake of fact under which the payment was made. In First Nat. Bank of Quitman v. Wood County, 294 S.W. 324 (Tex.Civ.App.—Texarkana 1927, affirmed by First Nat. Bank of Winnsboro v. First Nat. Bank of Quitman, Tex. Comm'n App., 299 S.W. 856), it was held that where a holder bank pays a forged check to the person presenting it without due care in identifying him, and drawee bank pays the check without active fault or negligence in discovering the lack of genuineness of the signature of its customer at the time, being thrown off its guard by reason of the holder bank endorsing it "Previous endorsements guaranteed," and in reliance thereon, and in reliance that holder bank exercised due care and diligence in the identification of the person to whom it paid the money on the check, the drawee bank was entitled to recover the amount paid the holder bank on the forged check.

It is noteworthy that in two of the cases relied upon by appellee wherein the general rule was followed, the Court recognizes that there are exceptions to such rule. In Citizens' Nat. Bank v. San Angelo Nat. Bank, supra, the Court stated: " * * * all the cases hold that a drawee bank paying a forged check purporting to have been drawn by its customer must allege and prove that drawer or other holder who received the money had knowledge of the forgery, *or was negligent*, or was a party to the forgery, before it can recover back its loss on such check." (Emphasis supplied.) In Marlin Nat. Bank v. Reed, supra, the Court said: "It was not alleged, nor is it here contended by the Marlin Bank, that it was misled or thrown off guard in accepting the forged instruments. Nor does it allege or contend that any act of TP caused it to accept and pay the forged instruments. Nor does it purport to offer any excuse for having made the mistake of not detecting the forgery."

Appellee places much emphasis on the contention that it was merely a conduit or intermediary bank for transmitting funds. The record does not bear this out. It is to be remembered that the series of transactions involved herein was started when Northside wrote First Federal on July 29, 1965, that its customer had pledged the amount of $1,800.00 as collateral on a note at Northside. · Such note, which was in-

troduced into evidence, is dated July 30, 1965, and purports to be a joint note of Hilda Rolapp and Al Meyer. Opposite the purported signature of Mrs. Rolapp is shown her correct address. Although it is undisputed in the record that such note was never signed by Hilda Rolapp, and that she received no part of the proceeds of such note or any benefits therefrom, $1,966.44 of Mrs. Rolapp's funds were used to pay off the outstanding balance owing on this note (as renewed) and an additional amount of $400.00, purportedly owed by Mrs. Rolapp to Northside. Although the record does not reveal what happened to the balance of the moneys sent to Northside over and above the amount used to pay off the joint debt aforesaid, it is to be remembered that two of such checks sent to Northside by First Federal were payable to Northside State Bank, credit account of Mrs. Hilda Rolapp. It is also noteworthy that First Federal had no dealings whatsoever with Al Meyer, the perpetrator of such fraud and that all of Al Meyer's dealings were with Northside. See First State Bank of Wichita Falls v. Oak Cliff Savings & Loan Ass'n, 387 S.W.2d 369 (Tex.Sup.1965). One of the officers of Northside testified that he had known Al Meyer for many years; that Northside had had previous loans with Al Meyer which had been satisfied; that he took Al Meyer's word that the signature was that of Mrs. Rolapp, and that he relied on Al Meyer. There is a dispute in the testimony as to whether the original assignment, which contained the purported signature of Hilda Rolapp, was ever sent to First Federal, or whether any request for verification of signature was ever made by Northside to First Federal. Mr. Crossman, an officer of First Federal who received Northside's letter pertaining to the assignment, testified that such assignment was not received by him, and that no request for verification of signature of Mrs. Rolapp was ever made to him. One of the

officers of Northside testified that such original assignment, which contained a request for verification of signature, was sent to First Federal. Another officer of Northside testified that it was not the custom of Northside to obtain verification of signature in this type of transaction. Such original assignment, which contained the purported signature of Mrs. Rolapp, was introduced into evidence by Northside, but it is to be noted that while such assignment contains a request for verification of signature to be evidenced by the signature of an officer or employee, is not signed and contains no representation thereon that such signature is that of Mrs. Rolapp. Northside asserts that it was merely a drawer or intermediate bank, and that First Federal was the drawee bank and that only First Federal had a signature card of Mrs. Rolapp. However, there was introduced into evidence a ledger account of Northside in the name of Mrs. Hilda Rolapp, which one of the officers of Northside identified as a checking account and testified that in connection with a checking account a signature card was required.

First Federal asserts that it was led to believe by Northside's acts and conduct that Northside was dealing face to face with Mrs. Rolapp and that it was misled and thrown off guard by such acts and conduct of Northside. This appears to be a reasonable inference from the record.

Mr. Crossman testified that he had checked the signature on the withdrawal requests with the actual signature of Mrs. Hilda Rolapp, and that such signatures are real close and appear almost perfect, and it is to be remembered that the jury absolved appellant of any negligence.

 Under the rules applicable to this Court on an appeal from a judgment non obstante veredicto, all of the jury's findings are amply supported by the evidence.

It is our opinion that this case falls within one of the recognized exceptions to the general rule, hereinbefore discussed, and is controlled by the rules set forth in Massachusetts Bonding & Ins. Co. v. Pittsburgh Pipe & Supply Co., 135 S.W.2d 818 (Tex. Civ.App.—El Paso 1940, writ dism'd jdgmt cor.), wherein the Court recognized that there is a clearly defined and well established exception to the general rule that if a bank pays a forged check of a depositor it will not be heard to assert a mistake as to the signature, which is that if the party receiving the money on the forged check has in any way contributed to the success of the fraud or to the mistake of fact under which the payment is made, or if the loss can be traced to the fault or negligence of the party receiving the money, then the loss should fall upon him, rather than upon the bank which paid out the money on the forged check in good faith and without actual negligence on its part.

Appellee, by two cross-points, urges that the trial court erred in submitting Special Issue No. 1,[2] because such issue was global, multifarious and constituted a general charge, and that it constituted a comment on the weight of the evidence. Northside makes no contention that any of the withdrawals or transactions by which Mrs. Rolapp's account was depleted are different in nature. We find no merit in these cross-points and they are overruled.

The judgment of the trial court is reversed and judgment here rendered that appellant recover of appellee the sum of $3,820.41. All costs are assessed against appellee.

2. "SPECIAL ISSUE NO. 1
Do you find from a preponderance of the evidence that the failure of the defendant Northside State Bank to ascertain the genuineness of the signature of Mrs. Hilda Rolapp before paying out mon-ey on said signature on the occasions in question was negligence? Answer 'Yes' or 'No'
We, the jury, answer: Yes."
Opinion delivered and
filed January 8, 1969